UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:23-CV-00081-FDW-SCR

| | |
|---|---|
| NANCY YOUNG FERGUSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Claimant Nancy Young Ferguson's Motion for Summary Judgment, (Doc. No. 8). This matter has been fully briefed, (Doc. Nos. 8 and 11), and is ripe for ruling. Claimant, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability insurance benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED, the Commissioner's Motion for Summary Judgment is GRANTED; and the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I. BACKGROUND

On February 5, 2019, Claimant filed an application for Title II DIB, alleging disability since August 15, 2014. (Tr. 19.) Claimant's claim was initially denied on December 31, 2019. (Tr. 117.) Claimant's claim was again denied at the reconsideration level on May 26, 2020. (Tr. 122.) On July 27, 2020, Claimant requested a hearing before an ALJ. (Tr. 131.) A hearing was held before ALJ John Pottinger in Asheville, North Carolina, on July 28, 2022. (Tr. 37.)

1

At the hearing, Claimant testified that she quit her job as an elementary school teacher in 2014 due to mental health issues. (Tr. 51.) The mental health issues Claimant suffers from include post-traumatic stress disorder, depression, and anxiety. (Tr. 70.) Claimant further testified that she has experienced mental health problems since 1987, but they only became intolerable when she left her job in 2014. (Tr. 51.) Claimant also alleged her symptoms have progressively worsened since 2014. (See id.) She claims this worsening is what led her to file a claim for DIB in 2019, when she "realized that [she] could not go back to [work]." (Tr. 53.) Claimant also has a history of several physical impairments, including anemia, Bell's Palsy, fibromyalgia, and Sjogren's Mixed Connective Tissue Disease. (Tr. 21.)

On August 29, 2022, ALJ Pottinger issued an unfavorable decision, finding Claimant "was not under a disability, as defined in the Social Security Act, at any time from August 15, 2014, the alleged onset date, through December 31, 2019, the date last insured." (Tr. 31.) Applying the five-step sequential evaluation process for determining whether an individual is disabled under the Social Security Act, the ALJ made the following findings of fact and conclusions of law: At step one, the ALJ found Claimant had not engaged in substantial gainful activity since August 15, 2014. (Tr. 21.) At step two, the ALJ found the following of Claimant's impairments to be severe: anemia, Bell's Palsy, depression, anxiety, post-traumatic stress disorder, and Sjogren's Mixed Connective Tissue Disease. (Id.) At step three, the ALJ determined Claimant did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1. (Tr. 22.) Before proceeding to step four, the ALJ determined the Claimant had "the residual functional capacity to perform medium work as defined in 20 CFR 404,1567(c) except she can perform simple tasks with customary breaks, no production rate pace or strictly enforced daily production quotas, and few changes in a routine

work setting." (Tr. 23.) The ALJ further determined Claimant was incapable of having any interaction with the general public and capable of only "occasional interaction with coworkers and supervisors, with no tandem or group tasks required." (Id.) Then, at step four, the ALJ found Claimant could not perform any past relevant work. (Tr. 29.) Finally, at step five, the ALJ found "there were jobs that existed in significant numbers in the national economy that the Claimant could have performed," including cleaner (DOT #389.683-010), Machine Tender (DOT # 699.686-010), and Inspector (DOT # 651.687-010). (Tr. 30.) Based on these findings, the ALJ determined Claimant was not disabled as defined under the Social Security Act. (Tr. 31.)

The Appeals Council denied Claimant's subsequent request for review and, as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 5.) Plaintiff has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the Social Security Commissioner's final decision to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). When examining a disability determination, a reviewing court is required to uphold the determination if an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight

3

of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Kennedy v. Saul, the Fourth Circuit explained the considerations applied before moving to step four:

> In assessing a claimant's RFC, "[t]he ALJ must consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect the claimant's ability to work," offering "a narrative discussion describing how the evidence supports each conclusion." Thomas [v. Berryhill], 916 F.3d [307,] 311 [(2019)] (brackets and internal quotation marks omitted). After "the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." Id. Thus, we have explained that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Id. "The ALJ's logical explanation[] is just as important as the other two" requirements because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Id.
>
> "[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." Lewis, 858 F.3d at 865-66; see 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c) (2019). The ALJ first "looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms" and then "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." Lewis, 858 F.3d at 866. The second step "requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." Id.
>
> The regulations instruct ALJs not to reject a claimant's reports about the intensity and persistence of her symptoms or about how her symptoms affect her ability to work solely because the medical evidence does not substantiate the reports. Id. Instead, when examining the credibility of an individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms and how they affect the individual, and any other relevant evidence." Social Security Rule (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996). An ALJ's assessment of a claimant's credibility regarding the intensity and persistence of her symptoms is entitled to great weight when it is supported by the record. See Hancock [v. Astrue], 667 F.3d

5

> [470,] 472 [(2012)]. "Significantly, however, the ALJ must build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible." Brown [v. Comm'r Soc. Sec. Admin.], 873 F.3d [251,] 269 [(2017)] (brackets and internal quotation marks omitted).

781 F. App'x 184, 186-87 (2019).

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Claimant argues the ALJ's RFC was legally flawed. Specifically, Claimant claims the ALJ did not accurately describe the severity of Claimant's conditions to the vocational expert by failing to incorporate into his hypothetical questions posed to the vocational expert: (A) the Claimant's testimony and Adult Function Report; (B) the clinical records of the clinical psychologist who treated her; (C) the Third-Party Function Report; and (D) the affidavits of Vicky Gribble and Beverly Henderson. Analogizing to Shelley C. v. Commissioner of Social Security Administration, Claimant suggests the ALJ cherry-picked facts from the record, violating his "'obligation to consider all relevant medical evidence.'" 61 F.4th 341, 362 (4th Cir. 2023) (quoting Lewis, 858 F.3d at 869). Thus, because her RFC does not accurately reflect "the magnitude of

6

[her] dysfunction," Claimant suggests the ALJ committed reversible error. The Court will address each of Claimant's arguments in turn.

**A. Claimant's Testimony and Adult Function Report**

First, Claimant argues the ALJ did not accurately describe Claimant's functional limitations as she described them during her testimony at her hearing and in the Adult Function Report (AFR). This argument is without merit. The ALJ gave Claimant's testimony and AFR thorough consideration, but found they were not "entirely consistent with the medical evidence and other evidence in the record." The ALJ highlighted Claimant's difficulty in interacting with others for fear "of being judged harshly." (Tr. 26.) He discussed how "she found it hard to leave her room" from 2014 till 2019 and that she spent "a lot of time thinking and reading and would be caught in her head in a constant loop of worry." (Id.) The ALJ also recognized Claimant's testimony that she "has to be heavily medicated to be able to interact or go places, such as attending her hearing." (Id.) However, the ALJ found discrepancies between Claimant's testimony and her treatment notes. (Tr. 27.) Although her treatment notes reflect

> a degree of isolation and low motivation, they also show that the [Plaintiff's] medications do work, her depression has improved, she is better able to leave her house and engage with others, her concentration and memory have improved with treatment, and she has been able to do some work activities like walking dogs, volunteering at a homeless shelter, and acting as power of attorney for her mother.

(Id.) While acknowledging Claimant's symptoms worsen when she does not take her medication as prescribed, the ALJ found that "the Claimant continues to improve." (Id.) Thus, the ALJ built a "logical bridge" explaining why he did not find Claimant's testimony and the AFR persuasive evidence.

7

## B. Clinical Psychologist's Clinical Records

Second, Claimant argues the ALJ did not accurately describe Claimant's functional limitations as described in the clinical records of her most recent clinical psychologist, Douglas McKee, Psy.D. Plaintiff highlights a few notes by Dr. McKee expressing how Claimant's depression and anxiety interfered with her ability to perform her job duties as a teacher, but that he was working with her to "develop[] coping skills for her eventual return to work." (Doc. No. 8, pp. 10–11.) The ALJ, however, detailed Claimant's treatment notes regarding her depression and anxiety from the time she began seeing Dr. McKee in November 2018 through her date last insured. (Tr. 27–28.)

The ALJ noted that "during treatment, the Claimant continued to report depression, anxiety, and low motivation, but she expressed a desire to return to teaching." (Tr. 28.) In January 2019, Dr. McKee noted Claimant "denied agitation, irritability, mania, or suicidal ideation. The Claimant said Adderall had improved her concentration, motivation, and productivity throughout the day. She seemed more alert and engaged than previously." (Id.) A couple months later, Claimant "denied side effects . . . . She said she was feeling 'much better' but still had some low mood, decreased interest in activities, and less optimism about the future." (Id.) In May 2019, she reported still feeling "depressed but denied anxiety, delusions, difficulty sleeping, impulsive or compulsive behaviors, excessive anger, hallucinations, being withdrawn, and inattentiveness." (Id.) In June 2019, Claimant reported being able to leave her house on more days and having more hope for the future. (Id.) In August 2019, Claimant "said she felt the best she had in years and had 'no depression for over a month.'" (Id.)

After reviewing Claimant's treatment notes and hearing her describe the symptoms she was having, the ALJ found her symptoms varied "depending on her level of activity and

8

engagement with others and the level of family and life stressors. Generally, however[,] the Claimant reported her depression was better overall." (Id.) Thus, the ALJ's detailing of Claimant's clinical records, including her treatment notes, reflects the fact the ALJ's description of Claimant's functional limitations was based on a thorough and holistic consideration of her clinical records.

### C.  Third-Party Function Report

Third, Claimant argues the ALJ did not accurately describe Claimant's functional limitations as her husband described them in the Third-Party Function Report. She points to her husband's statement that "[s]he spends much of her time isolated from others at home. Often isolated from family as well as in the bedroom. She gets overwhelmed by her anxiety and depression and doesn't function normally." (Doc. No. 8, p. 11.) The ALJ, however, found the report "generally not consistent with the record" because the record "does not demonstrate the degree of difficulty alleged." (Tr. 28.) Thus, the ALJ's determination that the report "is not entirely persuasive" is supported by substantial evidence.

### D.  Affidavits

Finally, Claimant argues the ALJ did not accurately describe Claimant's functional limitations as described by Vicky Gribble and Beverly Henderson in the affidavits they each submitted. The ALJ, however, found their statements "only partially persuasive." (Tr. 29.) Although the statements are consistent with how the record reflects Claimant's tendencies to isolate herself and avoid conflict, the ALJ explained "they do not reflect the Claimant's functioning over the entire period at issue. Contrary to both statements, her condition is improving, and medication does appear to be helping." (Id.) Thus, in determining the lack of persuasiveness of the affidavits, the ALJ considered the whole record, making his reasoning clear.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. No. 8), is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED, (Doc. No. 11); and the ALJ's decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: February 7, 2024

Frank D. Whitney
United States District Judge